IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DANIEL LEE BERG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:11-CV-419 (CAR) |
| | : | |
| PEARL WHITE, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## RECOMMENDATION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants Pearl White, Tony Trice, Alfred Edwards, and Arvid Sword. Doc. 42. Because Plaintiff has failed to demonstrate a genuine issue of material fact regarding Defendants' alleged failure to timely release Plaintiff from the Peach County Jail, and because Defendants have shown that they are entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

Also before the Court are Plaintiff's Motion to Compel (Doc. 38 ) and Amended Motion to Compel and Motion for Subpoenas (Doc. 41). In those motions, Plaintiff seeks the production of evidence to aid him in proving certain factual allegations in his Complaint. In ruling on the instant Motion for Summary Judgment, the Court has construed those factual allegations in Plaintiff's favor. Even considering those facts as true, Defendants have shown that they are entitled to summary judgment. Accordingly, it is **ORDERED** that Plaintiff's motions to compel are **DENIED** as moot.

1

PROCEDURAL BACKGROUND

On October 19, 2011, Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 alleging that various Peach County Jail (PCJ) officers and Peach County court staff violated his constitutional rights in violation of the Due Process Clause of the Fourteenth Amendment. Doc. 1. Specifically, Plaintiff alleges that he was held at the PCJ for nineteen (19) days following the Bryon Municipal Court's order that Plaintiff was to be released. Id. Plaintiff's Complaint contends that the jail officers informed Plaintiff that he would not be released until he paid $235.00 cash. Id. Plaintiff claims that the unlawful confinement violated his due process rights. Id. Following a frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's due process claims against Defendants White, Trice, Edwards, and Sword were allowed to proceed. Doc. 14. On July 3, 2012, following the close of discovery, Defendants filed the instant Motion for Summary Judgment. Doc. 42.

FACTUAL BACKGROUND

Construed in the light most favorable to Plaintiff, the facts of the case are as follows: In March through May of 2011, Plaintiff was incarcerated at the PCJ due to a series of bench warrants for failing to appear in court on multiple occasions. Compl. (Doc. 1); Deese Aff. (Doc. 42-3). On March 8, 2011, Plaintiff was arrested and incarcerated at the PCJ based on a bench warrant issued by the Peach County Superior Court for failure to appear on a possession of cocaine charge. Deese Aff.; Def. Ex. A (Doc. 42-3). On April 15, 2011, a Peach County Superior Court judge ordered that Plaintiff be released on his own recognizance. Deese Aff.; Def. Ex. B (Doc. 42-3). The judge ordered that Plaintiff not be released, however, until officers inquired into an outstanding Houston County warrant for Plaintiff's arrest. Id. A PCJ officer then contacted Houston County, and Houston County indicated that Plaintiff could be released. Deese Aff.; Def.

2

Ex. C (Doc. 42-3). The same day, an officer with the Byron Police Department served another bench warrant on Plaintiff, which was issued by a Byron Municipal Court judge for Plaintiff's failure to appear in municipal court. Deese Aff.; Def. Ex. D (Doc. 42-3). On April 17, 2011, a Byron police officer served a third bench warrant on Plaintiff, which was again issued for failing to appear in municipal court. Deese Aff.; Def. Ex. D (Doc. 42-3). As such, Plaintiff remained incarcerated at the PCJ.

On April 21, 2011, Plaintiff appeared in Bryon Municipal Court on the two bench warrants for failure to appear and the underlying charges of driving on a closed road and possessing an open container. Compl. (Doc. 1). Deese Aff. (Doc. 42-3). At Plaintiff's arraignment, Plaintiff signed a court order indicating that he was to pay a $235.00 cash only bond for "Failure to Appear-Felony". Def. Ex. F. (Doc. 42-3). On the same day, Plaintiff pleaded guilty to the charges and was given credit for time served. Pl.'s Compl. (Doc. 1).

Despite receiving credit for time served, Plaintiff was not released from the PCJ because the PCJ never received documentation from the court indicating that Plaintiff was to be released. Deese Aff. (Doc. 42-3). A fax indicating that Plaintiff received credit for time served was sent to the Byron Police Department rather than the PCJ. Def. Ex. G (Doc. 42-3). Although the PCJ received the court order indicating that Plaintiff was to pay a $235.00 cash bond for "Failure to Appear-Felony", the PCJ never received the subsequent order indicating that Plaintiff pleaded guilty and received credit for time served. Deese Aff. (Doc. 42-3).

Plaintiff complained to Defendants throughout the following days that he should have been released from the PCJ based on his guilty pleas and the sentence of credit for time served. Pl.'s Compl. Doc. 1. Because Defendants only possessed the paperwork indicating that Plaintiff was to pay a cash bond, however, Defendants informed Plaintiff that he would not be released

3

until he posted the bond. Edwards Aff. (Doc. 42-6). After Plaintiff continued to complain to Defendant Sword regarding his release, Defendant Sword contacted Defendant Edwards to look further into the matter. Id. Defendant Edwards examined Plaintiff's file and saw that the municipal court judge had ordered that Plaintiff pay a $235.00 cash bond prior to his release. Id. Defendant Edwards did not see anything in file regarding Plaintiff's guilty pleas or receiving credit for time served. Id. Because PCJ policy requires a written order of release from the court, probation, or other arresting agency before an inmate can be released, Plaintiff was not released at that time. Id.; Deese Aff. (Doc. 42-3).

      Defendant Edwards then made further inquiry into Plaintiff's case. Edwards Aff. (Doc. 42-6); Pl.'s Compl. (Doc. 1). Edwards first attempted to contact the municipal court judge to inquire into Plaintiff's release, but the judge was out of the office attending a funeral. Id. Edwards then contacted the Byron Probation Office. Edward's Aff. (Doc. 42-6). Edwards states that he was informed that Plaintiff was sentenced to time served on one set of charges but that Plaintiff had to pay the $235.00 bond on the other charge in order to be released. Id. As such, Defendants did not release Plaintiff at that time. Id.

      On May 10, 2011, Plaintiff's mother was able to secure Plaintiff's release. Compl. (Doc. 1); Curtis Aff. (Doc. 49). On that date, Plaintiff's mother went to the probation office and inquired about Plaintiff's release. Id. The probation officer made some telephone calls to determine whether Plaintiff could be released. Id. Having determined that Plaintiff could be released at that time, the probation officer sent a fax to the PCJ stating that Plaintiff could be released so long as there were no other holds placed on Plaintiff. Def. Ex. H. (Doc. 42-3). Plaintiff's mother then went to pick up Plaintiff from the PCJ, and Plaintiff was released. Compl. (Doc. 1); Curtis Aff. (Doc. 49). Although the PCJ received the fax from probation on May 10,

2011, informing that Plaintiff could be released, the PCJ did not obtain the copies of Plaintiff's guilty pleas indicating that Plaintiff was to receive credit for time served until after the instant lawsuit was initiated. Deese Aff. (Doc. 42-3).

## LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

DISCUSSION

Plaintiff contends that Defendants violated his due process rights by illegally detaining Plaintiff at the PCJ for nineteen days after Plaintiff pleaded guilty and was sentenced to credit for time served. Because Defendants were acting as state actors when they detained Plaintiff in the PCJ, Defendants are entitled to Eleventh Amendment immunity in their official capacities against Plaintiff's claims. Because it is undisputed that the PCJ did not receive documentation showing that Plaintiff was entitled to be released until May 10, 2011, Plaintiff has failed to show that Defendants were deliberately indifferent to Plaintiff's due process rights. Additionally, Defendants have shown that they are entitled to qualified immunity in their individual capacities against Plaintiff's claims. As such, Defendants are entitled to summary judgment.

1. Official capacity claims

Defendants are entitled to Eleventh Amendment immunity in their official capacities against Plaintiff's claims. The Eleventh Amendment protects a state from being sued in federal court without the state's consent. Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir. 1990). Eleventh Amendment immunity also prohibits lawsuits against officers sued in their official capacities for monetary damages because those actions usually seek recovery from state funds. Hobbs v. Roberts, 999 F.2d 1521, 1524 (11th Cir. 1990). A defendant does not need to be labeled as a state officer to receive Eleventh Amendment immunity, rather, a defendant merely needs to be acting as an "arm of the state." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citations omitted). To determine whether a defendant is acting as an arm of the state, the court must consider: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and, (4) who is responsible for judgments against the entity. Id.

Considering these factors, Defendants were acting as arms of the state when detaining Plaintiff at the PCJ. Because a Georgia sheriff's office is independent from the county in which it sits and is subject to control by the state legislature, the first factor supports granting Eleventh Amendment immunity to a sheriff, and by extension to a sheriff's deputies. See id. at 1310. Because the state also has "direct and substantial control over a sheriff's office," the second factor supports granting a sheriff's deputy Eleventh Amendment immunity. See id. at 1322. The third factor may or may not support granting a sheriff's deputy Eleventh Amendment immunity because the state funds annual training of sheriffs and pays for certain state offenders assigned to the county jails, but the county funds the majority of the expenses at the sheriff's office. See id. at 1323. Regarding the fourth factor, a Georgia county is not responsible to pay judgments against a sheriff in a tort or civil rights action. Id. at 1327. As such, the fourth factor also supports granting a sheriff's deputy Eleventh Amendment immunity. In view of these factors, Defendants are entitled to Eleventh Amendment immunity from Plaintiff's claims against them in their official capacities.

2. Individual capacity claims

The evidence in the record does not support a finding that Plaintiff's continued incarceration was a result of Defendants' deliberate indifference. To establish a false imprisonment claim under Section 1983, a plaintiff must show both a common law false imprisonment and a due process violation under the Fourteenth Amendment. Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009). To show a common law false imprisonment claim, a plaintiff must demonstrate "an intent to confine, an act resulting in confinement, and the victim's awareness of the confinement." Id. Defendant has not disputed the existence of a

genuine issue of material fact concerning the elements of a common law false imprisonment claim.

Although Plaintiff may be able to establish the elements of common law false imprisonment, the evidence does not support a finding that due process was violated. The Due Process clause of the Fourteenth Amendment includes the "right to be free from continued detention after it was or should have been know that the detainee was entitled to release." Id. To establish a due process violation, a plaintiff must prove that the defendants acted with deliberate indifference to his rights. Id. To prove deliberate indifference, the plaintiff must show that the defendants had (1) subjective knowledge of a risk of serious harm, and (2) disregarded that risk (3) by conduct that is more than mere negligence. Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003). "Human error does not equal deliberate indifference." West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007). "The deliberate indifference standard is a difficult burden for the plaintiff to meet, and we are competent to decide *as a matter of law* whether [a plaintiff has] carried [his] burden." Id. (internal quotations omitted) (emphasis in original).

The evidence in the record is insufficient to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's rights. Although certain facts are in question, those facts do not establish deliberate indifference, even when viewed in the light most favorable to Plaintiff. The undisputed evidence in this case shows that the multiple bench warrants and court appearances involved created significant confusion as to Plaintiff's status. It is difficult to determine, even with the municipal court records presently before the Court, whether Plaintiff was in fact required to pay the $235.00 cash bond on the "failure to appear-felony" charge in order to be released. It therefore remains unclear that Plaintiff was entitled to be released prior to May 10, 2011.

Even if Plaintiff was entitled to be released on April 21, 2011, Defendants actions do not amount to deliberate indifference because the PCJ did not receive paperwork indicating that Plaintiff was entitled to be released until May 10, 2011. It is undisputed that the only paperwork that was sent to the PCJ on April 21, 2011, indicated that Plaintiff was required to pay a cash bond. Defendants have provided evidence that the subsequent fax sent that day indicating that Plaintiff was to be given credit for time served was wrongfully sent to the Byron Police Department rather than the PCJ. Because Defendants did not have paperwork indicating that Plaintiff was entitled to be released, Defendants refused to release Plaintiff. Although Plaintiff contends that the judge announced in open court that Plaintiff was to be given credit for time served, PCJ policy requires written documentation before an inmate can be released. Additionally, Defendant Trice, who escorted Plaintiff to court, testifies that he did not remain in the courtroom throughout the proceedings and could not hear the conversations between Plaintiff and the judge. Defendant Trice states that he did not hear the judge announce Plaintiff's sentence.

In light of the confusion and in response to Plaintiff's concerns, Defendants inquired further into the matter of Plaintiff's status. Defendant Edwards attempted to contact the judge and contacted the probation office regarding Plaintiff's release. Based on his inquiries, Defendant Edwards believed that Plaintiff was required to pay the cash bond. Defendants' further investigation into the matter is evidence that Defendants were not deliberately indifferent to Plaintiff's rights. See West, 496 F.3d at 1328 (responding to an inmate's complaints by referring the matter for further investigation may fulfill an officials duties). Defendants' failure to resolve the situation in a more timely manner at most could be found to show that they were

9

negligent in failing to carry out their responsibilities. See id. Negligence is not sufficient to demonstrate deliberate indifference.

Defendants also assert that they are protected by qualified immunity against Plaintiff's claims. Qualified immunity protects government officials from civil liability when their conduct in performing discretionary functions "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (internal quotations omitted). To determine if defendants were performing a discretionary function, the court must look to whether the government employees were preforming a job related function through means that were within their power. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

As deputies at the PCJ, Defendants were performing a discretionary function when they detained Plaintiff. A jail employee acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Courts need not consider the two prongs of the analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id.

Leaving aside the question of whether the allegations in Plaintiff's Complaint amount to a constitutional violation, Defendants are entitled to qualified immunity because the facts alleged do not show that Defendants had fair warning that their actions violated a clearly established constitutional right. Cases alleging deliberate indifference "are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government

official and the constitutional adequacy of what was done to help and when." Id. Moreover, "[m]ost cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." Id.

Even if Defendants had refused to release Plaintiff after he was given credit for time served, they had no fair warning that their actions violated clearly established law when they relied upon the documentation supplied to the PCJ that Plaintiff was not entitled to be released without payment of a cash bond. Indeed, case law shows that an officer's failure to follow up on a court order of release may amount to mere negligence. See West, 496 F.3d at 1328. As the Eleventh Circuit stated in West, "[t]hat Plaintiffs were not released in a timely fashion from the Jail is bad. Mistakes were made. But no one is entitled to an error-free bureaucracy; and deliberate indifference -- the federal constitutional standard -- is a high standard." Id. at 1333. Accordingly, Defendants are protected by qualified immunity against Plaintiff's claims that he was unlawfully incarcerated beyond his release date.

## CONCLUSION

Because the record shows that Defendants were not deliberately indifferent to Plaintiff's right to be released from the PCJ, and because Defendants have shown that they are entitled to both Eleventh Amendment immunity and qualified immunity, Defendants are entitled to judgment as a matter of law. Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

Additionally, Plaintiff's motions to compel seek to produce evidence from his court hearing proving that he was given credit for time served and was therefore entitled to be released on April 21, 2011. Because the Court assumed that allegation to be true for the purpose of ruling on Defendants' Motion for Summary Judgment, Plaintiff's motions to compel are moot and are **DENIED**.

      **SO RECOMMENDED AND ORDERED**, this 17th day of January, 2013.

      s/ Charles H. Weigle
      Charles H. Weigle
      United States Magistrate Judge